Amber Gracia SBT:24098056/SDT:2799045
Quan Law Group PLLC
5444 Westheimer Ste. 1750
Houston, Texas 77056
Tel: (713) 625-9200
Fax: (713) 625-9222
Agracia@quanlaw.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| RICHARD LAWRENCE ALEXIS<br>　　　　Plaintiff-Petitioner,<br><br>　　v.<br><br>U.S. DEPARTMENT OF JUSTICE; U.S. ATTORNEY GENERAL JEFFERSON. B. SESSIONS; U.S. DEPARTMENT OF HOMELAND SECURITY; KIRSTJEN M. NIELSEN, SECRETARY OF UNITED STATES DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; THOMAS HOMAN, ICE ACTING DIRECTOR; PATRICK CONTRERAS, FIELD OFFICE DIRECTOR OF HOUSTON ICE FIELD OFFICE; ROBERT LACY, JR., WARDEN OF CCA HOUSTON PROCESSING CENTER; SARAH HARTNETT, CHIEF COUNSEL, ICE HOUSTON<br><br>　　　　Defendant-Respondents | No. 4:18-cv- 1923 |

## PLAINTIFF-PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff-Petitioner, by and through undersigned counsel, respectfully petitions this Honorable Court for a writ of habeas corpus to remedy his prolonged detention by Defendant-Respondents. Alternatively, Plaintiff-Petitioner seeks declaratory and injunctive relief requiring ICE to provide him with mental health treatment and medication. The basis for this petition is set forth in greater detail in the accompanying memorandum of law, including any attached exhibits, filed herewith.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION ....................................................................................................1

PARTIES..................................................................................................................5

JURISDICTION ………………………………….............................................6

VENUE .....................................................................................................................7

EXHAUSTION...................................................................................…..8

FACTS AND PROCEDURAL HISTORY ..............................................................9

    2007 Removal Proceedings….......................................................9

    Experience in Trinidad Post Deportation.........................................................10

    2017 Removal Proceedings…………………………………….....…………12

    2018 Removal Proceedings………………………………….………….14

    Efforts to Obtain Mental Health Care and Medication…………….…………15

    Detention Center Medical Notes……………………………………….......17

    Alexis' Treatment Plan Upon Release from Detention....................................19

CLAIMS FOR RELIEF ........................................................................................20

PRAYER FOR RELIEF........................................................................................30

# INDEX OF AUTHORITIES

## Cases

*Carachuri-Rosendo v. Holder*, 570 F.3d 263 (5th Cir. 2009) ...................................9

*McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081 (1992) ...................................7

*Demore v. Kim*, 538 U.S. 510, 123 S. Ct. 1708 (2003) ............................................1

*Haitian Refugee Ctr., Inc. v. Nelson*, 872 F.2d 1555 (11th Cir. 1989).....................7

*INS v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271 (2001)...............................................7

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976).......................................23

*Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550 (11th Cir. 1985) ..................7

*Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491 (2001) .......................................2

*United States v. Salerno,* 481 U.S. 739, 107 S. Ct. 2095 (1987)............................24

## Statutes

28 U.S.C. § 1651 .......................................................................................................6

28 U.S.C. § 2243 .......................................................................................................4

28 U.S.C. § 2201 .......................................................................................................6

8 U.S.C. § 1226 .........................................................................................................3

8 U.S.C. § 1252 .........................................................................................................6

8 U.S.C. § 1101 .........................................................................................................9

## Constitutional Provisions

U.S. Const. Amend. V...............................................................................................26

U.S. Const. Amend. VIII .................................................................................... 24, 28

U.S. Const. Art. I, § 9, cl. 2......................................................................................6

Petition for Writ of Habeas Corpus

## INTRODUCTION

1.  Richard Lawrence Alexis, a native and citizen of Trinidad and Tobago, entered this country lawfully as a lawful permanent resident (LPR), in 1991 and was later placed in removal proceedings stemming from a conviction related to a controlled substance violation.

2.  His immigration case was terminated by an immigration judge as a result of the Department of Homeland Security's failure to establish removability. Instead of being released, the U.S. Immigration and Customs Enforcement issued a second Notice to Appear (NTA) and the case was assigned to a second immigration judge who found him removable and denied his applications for relief from removal. His appeal is currently pending before the Board of Immigration Appeals (BIA).

3.  Alexis has a well-documented history of mental illness for which he has been denied treatment during his lengthy immigration detention.

4.  As set forth in the memorandum of law filed in support of the instant petition, the Government's mandatory detention of Alexis, when he has strong challenges to removal and when his removal proceedings have already extended well beyond the "brief period of time" typically needed to complete such proceedings, *Demore v. Kim*, 538 U.S. 510, 513 (2003),

violates both the Immigration and Nationality Act (INA) and the Constitution.

5.    The Supreme Court has repeatedly held that immigration detention violates due process unless it is reasonably related to its purpose. Moreover, where detention is prolonged, due process requires a "sufficiently strong special justification" to outweigh the significant deprivation of liberty, as well as strong procedural protections. *See Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001).

6.    Alexis' continued and mandatory detention bears no such reasonable relationship to its purpose.

7.    Simply put, the length of his detention—nearly the same and soon to be longer than the time he served for his criminal conviction and well over twice the average five-month period recognized by the Supreme Court in *Demore*, 538 U.S. at 530—is demonstrably unreasonable. The Government has never alleged a "sufficiently strong special justification" for such prolonged detention and has never provided Alexis with a hearing on the issue.

8.    Moreover, Alexis' 2017 removal proceedings, which were predicated on the same criminal conviction as his current proceedings, were terminated for the DHS' failure to meet its burden of establishing removability. Alexis

had been detained for nearly six months at the time proceedings were terminated by the immigration judge, which by itself was already longer than the "brief" and "necessary" period of detention authorized by the Supreme Court in *Kim*. Alexis' case was unnecessarily and unjustifiably delayed by DHS' failure to provide sufficient documentation in support of its charge.

9.   DHS thereafter reserved appeal and refiled the NTA, with additional copies of criminal records, twelve days after the 2017 proceedings were terminated.

10.   Alexis has not requested a continuance since the filing of the second NTA.

11.   Alexis has a strong basis for contesting the ultimate question of his removability, as his statute of conviction is undeniably overbroad and highly likely indivisible. He also has a strong case for relief from removal based on his past experience of harm and torture that occurred during after he was previously removed to Trinidad.

12.   This Court need not resolve the serious constitutional questions presented by Plaintiff-Petitioner's detention. Canons of statutory construction require that, where possible, courts should construe statutes so as to avoid serious constitutional problems.

13.   Under the doctrine of constitutional avoidance, the pre-final-order detention statute, 8 U.S.C. § 1226, must be construed to authorize detention only for a reasonable period of time.

14.   It therefore follows that neither § 1226(c), which the government asserts requires Plaintiff-Petitioner's mandatory pre-final-order detention, nor § 1226(a) authorize Plaintiff-Petitioner's nearly year-long detention, especially in the absence of a hearing in which the government bears the burden of establishing that his prolonged detention is warranted.

15.   Plaintiff-Petitioner thus respectfully requests that this Court issue a writ of habeas corpus and order his immediate release under reasonable conditions of supervision or, in the alternative, order a constitutionally adequate hearing where Defendant-Respondents must prove that his continued detention is justified.

16.   Accordingly, pursuant to 28 U.S.C. § 2243, Plaintiff-Petitioner respectfully requests that the Court immediately order Defendant-Respondents to show cause why the writ of habeas corpus should not be granted. Plaintiff-Petitioner also requests that the Court set a prompt hearing on this matter upon Defendant-Respondents' return on the order to show cause.

Petition for Writ of Habeas Corpus

PARTIES

17.     Plaintiff-Petitioner Richard Lawrence Alexis is a native and citizen of Trinidad and Tobago and a longtime resident of Houston, Texas.  He is currently detained by Defendant-Respondents at the Houston Contract Detention Facility.

18.     Defendant-Respondent Jefferson B. Sessions III is the Attorney General of the United States and the head of the Department of Justice, which encompasses the Board of Immigration Appeals and immigration judges as a subunit, the Executive Office of Immigration Review. Mr. Sessions shares responsibility for the implementation and enforcement of immigration laws along with Defendant-Respondent Nielson. Mr. Sessions is a legal custodian of Plaintiff-Petitioner. Mr. Sessions is sued in his official capacity.

19.     Defendant-Respondent U.S. Department of Homeland Security (DHS) is the parent agency of U.S. Immigration and Customs Enforcement (ICE) and U.S. Citizenship and Immigration Services (USCIS). Kirstjen Nielsen is the secretary of the DHS and is being sued in her official capacity.

20.     Defendant-Respondent U.S. Immigration and Customs and Enforcement ("ICE") is the division of DHS charged with detaining and removing aliens under U.S. immigration laws.

21.   Defendant-Respondent Thomas Homan is the ICE Acting Director in Washington, D.C.  Mr. Homan is sued in his official capacity.

22.   Defendant-Respondent Patrick Contreras is the Field Office Director of ICE in Houston, Texas. Mr. Contreras has physical custody of Plaintiff-Petitioner and is sued in his official capacity.

23.   Defendant-Respondent Robert Lacy, Jr., is the Warden of the Houston Contract Detention Center in Houston, Texas, where Plaintiff-Petitioner is currently being detained.  Thus, Defendant-Respondent has physical custody of Plaintiff-Petitioner. Mr. Lacy is sued in his official capacity.

24.   Defendant-Respondent Sarah Hartnett is the Chief Counsel for ICE Houston.  Thus, Defendant-Respondent has legal custody of Plaintiff-Petitioner.  Ms. Hartnett is sued in her official capacity.

## JURISDICTION

25.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201-02 (declaratory relief); and the U.S. Constitution, art. I, § 9, cl. 2 (Suspension Clause).

26.   Plaintiff-Petitioner has exhausted any and all administrative remedies to the extent required by law.

Petition for Writ of Habeas Corpus

27.  While the courts of appeals have jurisdiction to review removal orders directly through petitions for review, *see* 8 U.S.C. § 1252(a)(1), (b), the federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas claims by non-citizens challenging the lawfulness or constitutionality of their detention by ICE. *See, e.g., Demore v. Kim*, 538 U.S. at 516-17; *Zadvydas,* 533 U.S. at 687; *Jennings v. Rodriguez*, 583 U.S., 138 S.Ct. 138, L.Ed. 2d., 2018 WL 1054878 at *8, No. 15-1204 (Feb. 27, 2018) (plurality opinion); *see also id*. at *44, 128 S.Ct. 2307 (Breyer, J., dissenting) ("8 U.S.C. § 1252(b)(9), ... by its terms applies only with respect to review of an order of removal") (internal quotation marks and brackets omitted); *INS v. St. Cyr*, 533 U.S. 289, 121 S. Ct. 2271 (2001).

## VENUE

28.  Venue is proper in this district pursuant to Venue is proper in Southern District of Texas pursuant to 28 U.S.C. § 2241(d) because Plaintiff-Petitioner is being detained at the Houston Contract Detention Center in Houston, Texas. Defendant-Respondents Sarah Hartnett and Robert Lacy, Jr., are located in Houston, Texas.

29.  A copy of this motion is being served on all parties.

## EXHAUSTION

30.   Where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081 (1992); *Haitian Refugee Ctr., Inc. v. Nelson*, 872 F.2d 1555, 1561 (11th Cir. 1989) ("We note at the outset that the application of the judicial exhaustion doctrine is subject to the discretion of the trial court.") (citing *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1556-57 (11th Cir. 1985); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1034 (5th Cir. 1982) ("the exhaustion requirement is not a jurisdictional prerequisite but a matter committed to the sound discretion of the trial court").

31.   Here, Congress has not specifically mandated exhaustion before judicial review of custody determinations. Because exhaustion is not required by statute, sound judicial discretion should govern this Court's decision of whether to exercise jurisdiction absent exhaustion. *See McCarthy*, 503 U.S. at 144.

32.   Furthermore, any further attempts at exhaustion would have been futile as the immigration judge sustained DHS' charged ground of removability which falls within the provisions for mandatory detention under INA 236(c).

FACTS AND PROCEDURAL HISTORY

33. Plaintiff-Petitioner, Richard Lawrence Alexis ("Alexis"), is a 38 year old native and citizen of Trinidad and Tobago who entered the United States, along with his mother and brother, as a lawful permanent resident (LPR) in July of 1991 in Miami, Florida.

34. Alexis came to the United States when he was 11 years of age after his mother married a U.S. citizen. Prior to this, Alexis, his brother and mother were the victims of severe domestic abuse by Alexis' biological father, who stabbed Alexis when he was a young child, leaving a permanent scar on his side.

35. In the United States, Alexis became involved in his family's church and sports but as he became older he struggled with the effects of his past trauma and began using drugs.

2007 Removal Proceedings

36. In around 2007, Alexis was placed in removal proceedings as a result of two misdemeanor possession of marijuana convictions. To avoid removal, he applied for LPR cancellation of removal but this application was denied as it was determined that his second conviction qualified as an aggravated felony under 8 U.S.C. § 1101, rendering him ineligible for most forms of

relief. The immigration judge ordered him removed to Trinidad and Tobago.

37.   Alexis appealed the decision of the immigration judge to the Board of Immigration Appeals (BIA) who dismissed his appeal. A petition for review was thereafter filed with the Fifth Circuit Court of Appeals.

38.   Alexis was physically removed to Trinidad and Tobago after the BIA dismissed his appeal.

39.   While his petition was pending, the Fifth Circuit issued its decision in *Carachuri-Rosendo v. Holder*, 570 F.3d 263 (5th Cir. 2009), foreclosing Alexis' argument on appeal, and the Fifth Circuit denied his petition for review on November 13, 2009. *See Alexis v. Holder*, 354 F. App'x 62 (5th Cir. 2009).

40.   Alexis filed a petition for writ of certiorari with the U.S. Supreme Court thereafter, which was stayed in a memorandum penned by Justice Elena Kagan, pending the resolution of the same issue in *Carachuri-Rosendo v. Holder.* The U.S. Supreme Court later granted his petition for writ of certiorari on June 21, 2010, *Alexis v. Holder*, 561 U.S. 1001, 130 S. Ct. 3462 (2010)), and the case was remanded to the Fifth Circuit Court of Appeals, who reversed its decision and remanded his case. *See Alexis v. Holder*, 388 F. App'x 454 (5th Cir. 2010).

41.   In 2011, Alexis was allowed to return to the United States and upon further remand to the immigration court, Alexis was granted cancellation of removal.

## Experience in Trinidad Post-Deportation

42.   After he was physically removed to Trinidad and released from a shelter, he attempted to live with his abusive father. However, when his father threatened to have his police friends arrest and imprison him, he fled to a village where he slept in an unfinished abandoned house and begged for food.

43.   Struggling with mental illness and being without familial support, he took odd jobs to try to support himself but was often either not paid for his labor or was robbed and beaten when he did receive pay. When he sought help from the police, they refused to help and instead ridiculed him because of his American accent.

44.   Two of his maternal cousins were leaders of two separate criminal organizations. Both initially attempted to recruit him and subsequently physically attacked and threatened him with death.

45.   Toward the end of his time in Trinidad, Alexis awoke to dozens of armed police officers who stormed the abandoned home he was sleeping in and

began to interrogate him about his cousins' whereabouts and activities, accusing Alexis of being involved with them.

46.     These police officers proceeded to bind his arms and feet and forcefully throw him into the back of a truck, causing injury to his ribs. He was tossed about the open bed of the truck throughout the drive. He was taken to a detention center where he was further interrogated about his cousins but never informed of charges against him.

47.     During his three days of detention, Alexis was given a single daily meal consisting of a biscuit and small cup of water and was not provided with medical treatment for his injuries. He witnessed brutal acts of abuse and torture while in detention.

48.     Alexis was first informed of his alleged charges after he was forced into a 3 by 3 foot dog-style cage and transported for about an hour and a half to two hours to court. He was told that the police alleged that they had found twenty 20-sacks of marijuana on him in the abandoned house. Alexis' protests to the charges went unheard. A woman from the village informed Alexis' mother that she needed to pay a certain sum of money to secure his release or else he would serve prison time.

49.     After returning to the U.S., Alexis struggled to readjust after his traumatic post-removal experience. He experienced suicidal thoughts and on one

occasion, sought to end his life by drinking Drano. He resorted to harder drugs. He experienced auditory and visual hallucinations and was eventually diagnosed with bipolar disorder and placed on prescription medication.

<u>2017 Removal Proceedings</u>

50.   Following a conviction for possession of a controlled substance, Alexis was once again detained by ICE on June 26, 2017 and placed in removal proceedings by issuance of a Notice to Appear (NTA). Having previously received cancellation of removal, he was no longer eligible for this form of relief.

51.   On August 23, 2107, at a master calendar hearing in immigration court, Alexis, through counsel, contested removability and filed a motion to terminate proceedings on the basis that DHS failed to meet its burden of establishing removability by clear and convincing evidence. DHS opposed termination and later filed additional criminal records.

52.   The immigration judge denied his motion to terminate on September 27, 2017 but months later, on January 11, 2018, he terminated proceedings on the basis that DHS had indeed failed to meet its burden of establishing removability.

<u>2018 Removal Proceedings</u>

53.  On January 23, 2018, ICE issued a second NTA containing the same allegations and charge. He was placed in immigration proceedings before a second immigration judge.

54.  At his initial master calendar hearing on February 6, 2018, Alexis denied the charge of removability on the basis that DHS is unable to sustain its burden due to the statue not being categorical match to the federal controlled substance list, and that the state criminal statute is indivisible. Alexis submitted a motion to terminate and brief on removability and DHS submitted a brief in opposition.

55.  On March 20, 2018, the immigration judge denied Alexis' motion to terminate, finding that the statute of conviction was divisible.

56.  On May 17, 2018, a competency hearing was held in which the immigration judge found Alexis competent and proceeded to hold the individual hearing on the merits of his applications for asylum, withholding of removal and withholding under the U.N. Convention Against Torture. The immigration judge found Alexis credible but denied his applications for relief, finding that he suffered neither past persecution nor torture and lacked a well-founded fear of future persecution. The immigration judge further found that Alexis failed to show that it was more

likely than not he would either be persecuted or tortured if returned to Trinidad and Tobago and ordered him removed.

57. Alexis reserved appeal and filed his Notice of Appeal to the BIA on May 25, 2018.

<u>Efforts to Obtain Mental Health Care and Medication</u>

58. Over the course of his nearly 12 month-long detention, Alexis has suffered serious mental health issues, including suicidal thoughts, fear, agitation, and auditory and visual hallucinations. He has repeatedly sought to resume his previously-prescribed medication from the medical section.

59. At the onset of the 2017 removal proceedings, specifically on September 13, 2017, undersigned counsel contacted ICE via email and communicated that Alexis wished to receive the medication he had been proscribed prior to his immigration detention, and providing ICE with the contact information for Alexis' previous mental health provider. ICE replied the same day that the information was referred to the medical section and that the medical section acknowledged receipt of this information.

60. On September 25, 2017, undersigned counsel once again emailed ICE to report that Alexis had not seen medical staff and was feeling depressed and unable to get out of bed.

61. On September 28, 2017, Alexis was seen by medical staff at the detention center but the provider determined that "no need for treatment is indicated" and "no need for follow up is indicated." The medical notes indicate that Alexis offered to sign a release form for his previous mental health records.

62. On April 10, 2018, undersigned counsel's firm contacted ICE Office of Chief Counsel and requested a competency evaluation be performed by ICE. ICE OCC replied that the request had been forwarded to the case attorney. No further communication was received regarding this request.

63. On April 20, 2018 undersigned counsel requested a competency hearing. The immigration judge set a competency hearing for May 17, 2018.

64. On April 27, 2018, Ms. Jessica Eiseman, a board certified licensed professional counselor, retained by Alexis, conducted an evaluation of Alexis at the immigration detention center.

65. On April 30, 2018, she reported that Alexis suffers from PTSD and Recurrent Severe Major Depression with Psychotic Features. Ms. Eiseman further reported that Alexis' most recent documented suicidal ideation was in January of 2018 and that he reported experiencing hallucinations over the course of his detention.

66.     The report further recommended immediate psychiatric care and medication management, especially in light of the severity of Alexis' depression and the presence of psychotic features.

67.     On May 8, 2018, Alexis, through counsel, provided ICE with a copy of both his prior mental health records and the recent psychological evaluation report from Ms. Eiseman, along with a renewed request that Alexis be treated and proscribed an anti-depressant. ICE replied that the information had been forwarded to the medical section.

68.     To date, as relayed by Alexis and to the best of undersigned counsel's knowledge, Alexis continues to suffer symptoms of severe depression and has yet to be provided psychiatric care or anti-depressant medication.

<u>Detention Center Medical Notes</u>

69.     As previously noted, on September 28, 2017, the detention center medical provider concluded that Alexis suffers only from "cocaine abuse with unspecified cocaine-induced disorder" and "imprisonment and other incarceration" and requires neither mental health treatment not follow up care.

70.     Additionally, Alexis spent several weeks in isolation (segregation) after he sustained an injury from another detainee that left him with a laceration to his face that required stitches. Alexis was placed in segregation from what

appears from the medical records to be February 16, 2018 through March 6, 2018.

71. During this time, medical staff conducted daily visits and "weekly mental health seg[regation] rounds." Each weekly round resulted in notes indicating that Alexis was not receiving mental health treatment, did not require mental health treatment, and that Alexis' mood was "happy." The same conclusion and notes were entered on three separate occasion on February 20, February 27, and March 6, 2018.

72. Additionally, the notes from the daily segregation rounds indicate that on February 24th, 2018, Alexis was asleep in bed at 2:01 p.m. yet the notes also state that he had no complaints at the time and was psychologically alert and oriented.

73. The same occurred the following day, on February 25th, 2018, and the notes are nearly identical except that the round occurred at 12:37 p.m.

74. Similarly, on March 3rd, 2018, Alexis was purportedly in the shower when rounds were conducted yet it was determined that he had no complaints and was psychologically alert and oriented and had no thoughts of harming or killing himself.

75. The following day, on March 4th, 2018 at 11:00 a.m. Alexis was noted to have been asleep with his chest rising and falling, yet it was concluded that he had no complaints, and no thought of harming or killing himself.

76. Alexis has stated that he has made repeated requests for his anti-depressant medication, in addition to those made though counsel to ICE.

77. Per Alexis, on June 6, 2018, he requested his medication to treat his depression and was told by medical staff that he did not need it and that it "would hurt his case." He replied that he still wanted and needed the medication. He reportedly was asked to sign a form and was sent to see a captain who told him that they could not give him medication because they never received "any orders" to allow him to receive the medication and that he should follow up with his attorney.

## Treatment Plan Upon Release from Detention

78. Ms. Eiseman performed an evaluation of Alexis while in immigration detention on April 27, 2018. She created a discharge plan that documents Alexis' plans for being released into the community.

79. Per the discharge plan, Alexis will reside with his parents in Hempstead, Texas and secure employment, subject to periodic drug testing, with his father's business. He will continue drug counseling, as he has been doing

throughout his detention, and will engage in psychiatric and psychological treatment and counseling.

80.     Alexis is intent on paying his parents back and complying with the conditions of his parole from criminal custody. He plans to continue receiving spiritual support through his family's church's men's group and assisting his mother's homeless ministry.

## CLAIMS FOR RELIEF:

### FIRST CLAIM
### VIOLATION OF IMMIGRATION AND NATIONALITY ACT—
### MANDATORY DETENTION OF A NON-CITIZEN WHO HAS A
### SUBSTANTIAL CHALLENGE TO DEPORTABILITY

81.     Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

82.     8 U.S.C. § 1226(c)(1)(B), the sub-provision under which Alexis is detained, provides, in relevant part, that the Attorney General "shall take into custody any alien who . . . *is deportable* by reason of having committed" designated offenses. *Id.* (Emphasis added).

83.     In avoidance of the serious constitutional problems that would arise if the statute were construed as requiring the mandatory detention of non-citizens with substantial challenges to deportability, and in the absence of any

indication that Congress intended this result, the *"is deportable"* language in § 1226(c) should be construed as not applying to such individuals.

84.    Because Alexis has a strong challenge to removability (i.e. the categorical overbreadth and indivisibility of his statute of conviction) and substantial claims for asylum, withholding of removal, and relief under the Convention Against Torture (CAT), he is not "deportable" under the meaning of § 1226(c) and his mandatory detention is not authorized by statute.

SECOND CLAIM
VIOLATION OF IMMIGRATION AND NATIONALITY ACT—
MANDATORY DETENTION OF A NON-CITIZEN BEYOND THE
BRIEF PERIOD OF TIME CONTEMPLATED BY *DEMORE V. KIM*

85.    Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

86.    The statute under which Alexis is detained, 8 U.S.C. § 1226(c), is notably silent with regard to the length of mandatory detention authorized. Because of the serious constitutional problems that would be posed if § 1226(c) authorized mandatory detention for a prolonged period of time, and in the absence of any indication that Congress intended such a result, this Court should construe the statute as authorizing such detention only for the "brief period of time necessary" to complete removal proceedings. *Demore*, 538 U.S. at 513.

87.     Alexis' detention, nearly surpassing a year, far exceeds the "brief period of time necessary" to complete removal proceedings. Therefore, his mandatory detention is not authorized by 8 U.S.C. § 1226(c).

### THIRD CLAIM
### VIOLATION OF CONSTITUTIONALLY VALID INTERPRETATION OF 8 U.S.C. § 1226(c)
### SUBSTANTIVE DUE PROCESS

88.     Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

89.     The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V.

90.     Freedom from physical restraint is a fundamental interest protected by the Due Process Clause. This liberty interest is threatened when an individual is subjected to unreasonable detention.

91.     The Due Process Clause of the Fifth Amendment protects all persons residing in the United States. *See Zadyvdas v. Davis*, 533 U.S. 678, 693 (2001).

92.     The doctrine of constructional avoidance dictates that courts should interpret statutes in such a way that constitutional questions are avoided whenever possible.

93. To avoid violating the constitutional requirements of substantive due process under the Fifth Amendment to the Constitution, this Court should interpret 8 U.S.C. § 1226(c) as authorizing only "reasonable" detention.

FOURTH CLAIM
VIOLATION OF CONSTITUTIONALLY VALID INTERPRETATION OF 8
U.S.C. § 1226(c) – PROCEDURAL DUE PROCESS

94. Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

95. Procedural due process imposes constraints on governmental decisions that deprive individuals of "liberty" interests within the meaning of the Due Process Clause of the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

96. The need for specific procedural protections under the Due Process Clause is evaluated by balancing the following factors: the private interest affected by official action; the risk of erroneous deprivation of that interest and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that additional procedural requirements would entail. *See id*. at 335.

97. To avoid constitutional uncertainty, this Court should interpret 8 U.S.C. § 1226(c) as authorizing an individualized bond hearing when the private

Petition for Writ of Habeas Corpus

interest affected and the risk of erroneous deprivation of the private interest outweigh the government's interest in minimizing the burden of additional procedural requirements.

98.  The private interest affected by Defendant-Respondents' actions—Alexis' liberty interest—is substantial. Alexis has been detained for nearly a year. His detention has impeded his access to comprehensive psychiatric treatment and psychological counseling needed for the extensive trauma he has suffered in the past. Moreover, Alexis is neither a flight risk nor a danger to the community.

99.  Furthermore, the risk of erroneous deprivation of liberty is high and the value of an individualized bond hearing would be significant. Without a bond hearing, Alexis would be subject to continued detention. However, if an individualized bond hearing is afforded, Alexis would present evidence that demonstrates that he is neither a flight risk nor a danger to the community and therefore eligible for release on bond.

100. The government's interest in the prolonged detention of an individual who is neither a flight risk nor a danger to the community and whose deportation is not reasonably foreseeable is slight.

## FIFTH CLAIM
## VIOLATION OF CONSTITUTIONALLY VALID INTERPRETATION
## OF 8 U.S.C. § 1226(c) – EIGHTH AMENDMENT

101.   Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

102.   The Excessive Bail Clause of the Eighth Amendment prohibits the Government from setting conditions of release or detention that are "'excessive' in light of the perceived evil.'" *United States v. Salerno,* 481 U.S. 739 (1987); see U.S. Const. amend. VIII.

103.   In order to avoid constitutional doubt, 8 U.S.C. § 1226(c) should be construed as authorizing no-bond detention only when there exists a compelling government interest other than the prevention of flight, and further, where the length of detention is limited.

104.   Alexis neither poses a high flight risk nor is he a danger to the community. If released from ICE custody, Alexis would be willing to be subject to conditions of release, including electronic monitoring and would be further subject to the conditions of his release from criminal custody. He has an extensive post-release support plan and strong family support, as outlined in Ms. Eiseman's Discharge Plan. He will reside with his parents, continue to have access to psychiatric care and professional psychological and

substance abuse counseling, and he would continue receiving spiritual guidance and support with his church group.

## SIXTH CLAIM
## VIOLATION OF FIFTH AMENDMENT SUBSTANTIVE DUE PROCESS

105.   Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

106.   Substantive due process principles forbid the infringement of fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling government interest.

107.   Interpreting 8 U.S.C. § 1226(c) as authorizing prolonged no-bond detention when the likelihood of ultimate removal is not foreseeable would violate the requirements of substantive due process.

108.   Freedom from physical restraint is a liberty interest protected by substantive due process. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Alexis' interest in liberty after nearly twelve months of detention is a fundamental liberty interest.

109.   The prolonged no-bond detention of Alexis, an individual who does not pose a danger to the community or a flight risk, is not narrowly tailored to serve a compelling government interest. Interpreting 8 U.S.C. § 1226(c) as

authorizing Alexis' continued detention without a bond hearing violates his substantive due process rights.

## SEVENTH CLAIM
## VIOLATION OF FIFTH AMENDMENT PROCEDURAL DUE PROCESS

110.  Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

111.  Procedural due process requires that the government be constrained before it acts in a way that deprives individuals of liberty interests protected under the Due Process Clause of the Fifth Amendment.

112.  Certain procedures constraining governmental action may be required after a consideration of the following three factors: the private interest affected by official action; the risk of erroneous deprivation of that interest and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that additional procedural requirements would entail.

113.  Alexis' private liberty interest and that of other members of the proposed class is substantial. The risk that he has been erroneously deprived of liberty is high due to his deprival of an individualized bond hearing, in

27

which he could present evidence that demonstrates that he is neither a flight risk nor a danger to the community.

114. The government's interest in Alexis' continued detention without an individualized bond hearing is slight when considering that he is neither a flight risk nor a danger to the community.

115. Interpreting 8 U.S.C. § 1226(c) as authorizing the continued detention without an individualized bond hearing violates procedural due process.

EIGHTH CLAIM
VIOLATION OF EIGHTH AMENDMENT EXCESSIVE BAIL CLAUSE

116. Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

117. The Excessive Bail Clause of the Eighth Amendment prevents prolonged detention without a bond hearing when there is no compelling government interest other than the prevention of flight.

118. Interpreting 8 U.S.C. § 1226(c) as authorizing prolonged no-bond detention violates the requirements of the Excessive Bail Clause of the Eighth Amendment.

119. Alexis' nearly year-long, "mandatory" detention serves no compelling government interest.

120. Interpreting 8 U.S.C. § 1226(c) as authorizing his continued detention without a bond hearing violates the Excessive Bail Clause of the Eighth Amendment.

NINTH CLAIM
REFUSAL TO PROVIDE MENTAL HEALTH TREATMENT AND
MEDICATION-CRUEL AND UNUSUAL PUNISHMENT
EIGHTH AMENDMENT

121. Plaintiff-Petitioner re-alleges and incorporates by reference paragraphs 1 through 78 above.

122. The Constitution prohibits the infliction of cruel and unusual punishments.

123. ICE standards require facilities to give detainees timely access to medical care with regard to medical, dental, and mental health care.[1]

124. Defendant-Respondents knowingly and repeatedly refused to provide Alexis with adequate mental health care and medication, despite his repeated requests and being provided medical records documenting his mental illness and need for medication.

---

[1] Immigration and Customs Enforcement, Operations Manual ICE Performance Based National Detention Standards, Medical Care, available at http://www.ice.gov/doclib/PBNDS/pdf/medical_care.pdf.

Petition for Writ of Habeas Corpus

## PRAYER FOR RELIEF

Wherefore, Plaintiff-Petitioner prays the Honorable Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Enter a judgment declaring that Defendant-Respondents' detention of Plaintiff-Petitioner is unauthorized by statute, contrary to law, and unconstitutional;

(3) Enter a judgment declaring that Defendant-Respondents' refusal to provide adequate mental health care to Plaintiff-Petitioner is contrary to law, and unconstitutional;

(4) Issue a Writ of Habeas Corpus requiring Defendant-Respondents to release Plaintiff-Petitioner immediately; or, in the alternative, hold a constitutionally valid individualized bond hearing;

(5) Order Defendant-Respondents to refrain from transferring Plaintiff-Petitioner out of the jurisdiction of the Court during the pendency of this proceeding and while Plaintiff-Petitioner remains in Defendant-Respondents' custody;

(6) Issue an injunction requiring Defendant-Respondents to provide Plaintiff-Petitioner with adequate mental health care and medication to treat his ongoing mental illness:

(7) Award Plaintiff-Petitioner reasonable costs and attorney's fees; and

(8) Grant such other relief as the Court may deem just and proper.

I swear, under penalty of perjury that the foregoing factual information is true and correct to the best of my knowledge.

DATED: June 11, 2018 in Houston, Texas.

/s/ *Amber Gracia*

Amber Gracia
Attorney-in-Charge
State Bar # 24098056
SDT # 2799045
Quan Law Group PLLC
5444 Westheimer Ste. 1750
Houston, Texas 77056
Tel: (713) 625-9200
Fax: (713) 625-9222
Agracia@quanlaw.com