**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RICHARD LAWRENCE ALEXIS | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-1923 |
| | § | |
| | § | |
| JEFFERSON B. SESSIONS, *et al.*, | § | |
| | § | |
| Respondents. | § | |

**MEMORANDUM AND ORDER**

Richard Lawrence Alexis is in the custody of Immigration and Customs Enforcement, United States Department of Homeland Security, at the Contract Detention Facility in Houston, Texas. (Docket Entry No. 1 at ¶ 17). He seeks a writ of habeas corpus under 28 U.S.C. § 2241 ordering his release. (*Id.* at ¶¶ 15, 25). Alexis alternatively requests a hearing on whether his continued detention is justified. (*Id.* at ¶ 15).

The respondents, Jefferson B. Sessions, Attorney General of the United States; Kirstjen M. Nielsen, Secretary of the Department of Homeland Security; Immigration and Customs Enforcement; Thomas Homan, the Acting Director of Immigration and Customs Enforcement; Patrick Contreras, the Immigration and Customs Enforcement Field Office Director in Houston; Robert Lacy, Jr., Warden of the Houston Contract Detention Center; and Sarah Hartnett, Chief Counsel of Immigration and Customs Enforcement in Houston, have moved to dismiss improper defendants. They have also moved to dismiss the petition under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim on which relief can be granted. (Docket Entry No. 21). Alexis responded, and the court heard argument. (Docket Entry Nos. 22, 23).

Based on a review of the petition, motion, response, the record, the arguments of counsel, and the applicable law, the court grants and denies Alexis's petition in part. The reasons are set out in detail below.

## I. Background

Richard Lawrence Alexis is a 38-year-old native and citizen of Trinidad and Tobago. (Docket Entry No. 1 at ¶¶ 17, 33). He first entered the United States in 1991 as a lawful permanent resident. (*Id.* at ¶ 33). Alexis alleges that his biological father severely abused him during his childhood in Trinidad and Tobago, and that he began using drugs as a result. (*Id.* at ¶¶ 34–35).

In 2007, the government initiated removal proceedings against Alexis based on his two misdemeanor convictions for marijuana possession.[1] (*Id.* at ¶ 36). The immigration judge ordered Alexis removed, reasoning that the second conviction was an aggravated felony under 8 U.S.C. § 1101. (*Id.*). Alexis appealed. (*Id.* at ¶ 37). The Board of Immigration Appeals and the Fifth Circuit affirmed, *Alexis v. Holder*, 354 F. App'x 62 (5th Cir. 2009), but the Supreme Court vacated the order and remanded the case. *Alexis v. Holder*, 561 U.S. 1001 (2010).

The government removed Alexis to Trinidad and Tobago after the Board of Immigration Appeals denied his appeal. (Docket Entry No. 1 at ¶ 38). Alexis alleges that he experienced significant trauma there, including undiagnosed mental illness, homelessness, domestic abuse, police brutality, threats, torture, and imprisonment. (*Id.* at ¶¶ 42–48).

On remand, the immigration judge revoked Alexis's removal order, and he reentered the United States in 2011. (*Id.* at ¶ 41). Alexis alleges that he continued to suffer from mental illness, and that he attempted suicide after returning to the United States. (*Id.* at ¶ 49). He also abused

---

[1] The government argues that Alexis had been convicted of possessing a controlled substance on three, not two, occasions before his removal to Trinidad. (Docket Entry No. 21 at 1).

drugs and in 2016 was again convicted for possessing a controlled substance, a felony under Texas law.[2]  (*Id.* at ¶¶ 49–50).  The government detained Alexis in June 2017 and initiated proceedings to remove him from the United States.  (*Id.* at ¶ 50).

Alexis moved to terminate the removal proceedings.  (*Id.* at ¶ 51).  After denying the motion in September 2017, the court terminated the proceedings in January 2018, holding that the Department of Homeland Security had failed to establish removability.  (*Id.* at ¶ 52).  Later that month, the government renewed the removal charge against Alexis on the same basis, that he had committed a crime involving a controlled substance, warranting deportation.  (*Id.* at ¶ 53).  Alexis again disputed removability, arguing that the statute under which he was convicted in 2016 was not a categorical match to the federal controlled-substance statute, and that the state criminal statute was indivisible.  (*Id.* at ¶ 54).  The immigration judge disagreed, finding that the state statute matched the controlled-substance list and that the statute was divisible.  (*Id.* at ¶ 55).  In May 2018, the immigration judge found that Alexis was competent, denied his requests for relief, and ordered him removed.  (*Id.* at ¶ 56).  Alexis appealed to the Board of Immigration Appeals in May 2018, and the Board dismissed his appeal in October 2018.  (*Id.* at ¶ 57; Docket Entry No. 22 at 4).  Alex petitioned the Fifth Circuit for review in November 2018.  (Docket Entry No. 22 at 4).

Alexis petitioned this court for a writ of habeas corpus in June 2018, alleging that he has been in detention since June 2017.  (Docket Entry No. 1 at ¶ 58).  Alexis claims that he has asked the government to treat him for mental health illness and alleges that the failure to provide it results from deliberate indifference to his medical needs.  (*Id.* at ¶ 58; Docket Entry No. 22 at 6).  He contends that even though a board-certified professional counselor reported that he suffers from

_____

[2] According to the government, Alexis served his sentence from November 15, 2016, to June 26, 2017.  (Docket Entry No. 21 at 2).

3

post-traumatic stress disorder and recurrent severe major depression with psychotic features, the government has yet to provide him with medical care. (Docket Entry No. 1 at ¶¶ 65, 68).

Alexis makes the following claims for relief: (1) he is not "deportable" under 8 U.S.C. § 1226(c)(1)(B), (*id.* at ¶¶ 83–84); (2) his 16-month detention is "demonstrably unreasonable" under *Denmore v. Kim*, 538 U.S. 510, 513 (2003), (*id.* at ¶¶ 7, 86–87); (3) his continued detention violates his substantive and procedural due-process rights under 8 U.S.C. § 1226(c), (*id.* at ¶¶ 90, 93, 97); (4) his continued detention violates the Eighth Amendment's Excessive Bail Clause, (*id.* at ¶¶ 102–04; 118–20); (5) his continued detention violates his substantive and procedural due-process rights under the Fifth Amendment, (*id.* at ¶¶ 107–09, 111–15); and (6) the government's refusal to treat his medical conditions violates the Eighth Amendment's proscription against cruel and unusual punishment. (*Id.* at ¶¶ 122–24). Alexis asks the court for declaratory and injunctive relief, a writ of habeas corpus releasing him from detention, and an order requiring the government to hold a bond hearing. (*Id.* at 30).

The government has moved to strike certain respondents, and to dismiss the petition for lack of subject-matter jurisdiction and for failure to state a claim. Alexis responded, and the court heard argument from counsel.[3] (Docket Entry Nos. 21, 22, 23).

The issues raised by Alexis's petition, the government's motion, and Alexis's response are analyzed below.

## II.    The Legal Standards

### A.    Rule 12(b)(1)

---

[3] Alexis argues that the respondents' motion to dismiss is untimely because they answered in July 2018 and moved to dismiss in October. (Docket Entry No. 22 at 7). In September 2018, the court issued a scheduling order for this case, directing the respondents to move to dismiss on October 26, 2018, the day the motion was filed. (Docket Entry No. 15). The respondents timely moved to dismiss.

Rule 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of the plaintiff's cause of action, the district court has substantial authority to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Williamson*, 645 F.2d at 413 (quotation omitted). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief." *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

### B. Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp.v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550, U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (alteration omitted) (quoting *Twombly*, 550 U.S. at 558).

## III.     Analysis

### A.        The Motion to Dismiss Certain Parties

Alexis named Sessions, Nielsen, Homan, Contreras, Hartnett, and Lacy as respondents to his petition. (Docket Entry No. 1 at ¶¶ 18–24). The government moves to strike the claims against Sessions, Nielsen, Homan, Contreras, and Hartnett, and to dismiss them as parties, arguing that under *Padilla*, the only proper respondent in a habeas case is the petitioner's immediate custodian. (Docket Entry No. 21 at 10). Lacy is Alexis's immediate custodian and, according to the government, the only proper respondent. (*Id.*).

Alexis responds that the government has moved him between multiple detention facilities, and that his immediate custodian "has changed several times and will continue to change." (Docket Entry No. 22 at 5). Alexis argues that "Lacy is no longer a proper [respondent] because [Alexis] has been moved from the Houston SPC-CCA contract detention center . . . and is currently at the Montgomery Processing Center . . . in Conroe, Texas, where Randy Tate is the current warden." (*Id.*). Contreras, Homan, and Hartnett are proper respondents, Alexis contends, because the "decision to transfer [him] is not within the control of the [Montgomery Processing Center] warden, but rather in the control of [Immigration and Customs Enforcement]." (*Id.*).

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). "The consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition." *Id.* "This custodian[] is 'the person' with the ability to produce the prisoner's body before the habeas court." *Id.* at 435. The general "rule is that the proper respondent is the warden of the facility where the prisoner is being held, not . . . some other remote supervisory official." *Id.*

Even though Alexis alleges that he has been transferred to a different facility, there is no basis to depart from *Padilla*'s clear directive. The only proper respondent in this case is Randy Tate, the warden of the Montgomery Processing Center, because he is Alexis's immediate custodian, "'the person' with the ability to produce [his] body before the habeas court." *Id*. The claims against Sessions, Nielsen, Homan, Contreras, and Hartnett are dismissed because they are "remote supervisory official[s]," not Alexis's custodian. Alexis may amend his petition to add Tate as a respondent no later than **November 30, 2018**. *Id.* at 434. Because the government has transferred Alexis between facilities, the court does not dismiss Lacy in the event that Alexis returns to the Houston Contract Detention Facility.

### B.     The Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction

The government moves to dismiss under Rule 12(b)(1) on the grounds that Alexis's petition challenges the merits of his removal order and that he failed to exhaust administrative remedies. (Docket Entry No. 21 at 3–10). Alexis responds that *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), provides a basis for jurisdiction over his petition and that he exhausted his administrative remedies in 2017. (Docket Entry No. 22 at 2–5).

Federal courts lack subject-matter jurisdiction to review the merits of a removal order or the discretionary decisions of the Attorney General. *See Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007); *Andrade v. Gonzales*, 459 F.3d 538, 542 (5th Cir. 2006); *Gul v. Rozos*, 163 F. App'x 317, 318–19 (5th Cir. 2006) ("We note first that the Real ID Act stripped the district courts of jurisdiction over 28 U.S.C. § 2241 petitions attacking removal orders. To the extent that Gul's petition challenged his continued detention rather than the final order of removal, nothing in the Real ID Act precluded the district court form adjudicating the claim."). But federal courts have subject-matter jurisdiction to consider an alien's constitutional challenges to continued detention. *See Jennings*,

138 S. Ct. at 841 (8 U.S.C. §§ 1252(b)(9) and 1226(e) are not jurisdictional bars to habeas petitions challenging confinement under § 1226(c)).

Alexis's first claim for relief asks the court to construe the term "deportable" in 8 U.S.C. § 1226(c)(1)(B)." (Docket Entry No. 1 at ¶ 83). Under § 1226(c)(1)(B), the Attorney General "shall take into custody any alien who . . . is *deportable* by reason of having committed" certain crimes. 8 U.S.C. § 1226(c)(1)(B) (emphasis added). Alexis claims that because he "has a strong challenge to removability" and "substantial claims for asylum, withholding of removal, and relief under the Convention Against Torture, he is not 'deportable' under the meaning of § 1226(c)(1)(B)." (Docket Entry No. 1 at ¶ 84). The court lacks jurisdiction over this claim because it requires assessing the merits of Alexis's removal order. *See Moreira*, 509 F.3d at 712. But Alexis's other claims present constitutional challenges to his detention, and the court has jurisdiction over them.

As to exhaustion, § 1252, the statute governing judicial review of removal orders, requires exhaustion if the petitioner is subject to a final order. 8 U.S.C. § 1252(d)(1) ("A court may review a *final order* of removal only if . . . the alien has exhausted all administrative remedies.") (emphasis added). Aliens detained under § 1226(c) are subject to provisional orders. Once an order becomes administratively final, § 1226 no longer controls. *See Andrade*, 459 F.3d at 543. The law is silent as to whether aliens detained under § 1226(c) must exhaust administrative remedies before seeking relief in federal court. *See Sulayao v. Shanahan*, No. 09-CV-7347 (PKC), 2009 WL 3003188, at *3 (S.D.N.Y. Sep. 15, 2009) ("[T]here is no statutory requirement for petitioner to exhaust his administrative remedies before judicially challenging his mandatory detention."); *Sengkeo v. Horgan*, 670 F. Supp. 2d 116, 121 (D. Mass. 2009).

Although exhaustion is not statutorily required, the Fifth Circuit has established that "[a] person seeking habeas relief must first exhaust available administrative remedies." *Hinojosa v.*

*Horn*, 896 F.3d 305, 314 (5th Cir. 2018). "The exhaustion . . . doctrine requires not that only administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." *Id.* (quoting *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985)). But "[e]xceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Id.* (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curium)).

Alexis concedes that he has not exhausted all available administrative remedies. (Docket Entry No. 1 at ¶ 32). He has not petitioned the immigration court for a bond hearing. Nor has he requested a hearing under *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), to challenge the basis of his removal. But Alexis argues that "any further attempts at exhaustion would be futile." (Docket Entry No. 1 at ¶ 32). The government responds that those failures divest this court of subject-matter jurisdiction. (Docket Entry No. 21 at 7).

The Board of Immigration Appeals "has clearly and repeatedly upheld the denial of a bond hearing under the view that § 1226(c) mandates detention without bond." *Sengkeo*, 670 F. Supp. 2d at 122. And, here, the immigration judge sustained the government's ground of removability under § 1226(c). (Docket Entry No. 1 at ¶ 32; Docket Entry No. 21 at 2). Alexis appealed, and in October 2018, the Board dismissed Alexis's appeal. (Docket Entry No. 22 at 4). It is clear that any attempt by Alexis to receive a bond hearing or to overturn the basis of his detention would be futile. *See Quintero v. Holder*, No. SA-14-CA-474-XR (PMA), 2014 WL 4063966, at *2 (W.D. Tex. Aug. 18, 2014) ("To the extent Respondent is arguing that the case should be dismissed for failure to exhaust administrative remedies, the Court notes that Petitioner does not contest the Immigration

Judge's determination that he is subject to mandatory detention and therefore dismissal for failure to request a *Joseph* hearing is inappropriate."); *Garcia v. Lacy*, No. H-12-3333, 2013 WL 3805730, at *3 (S.D. Tex. July 19, 2013) (same). Futility excuses Alexis's failure to exhaust his administrative remedies.

The court grants in part and denies in part the government's motion to dismiss under Rule 12(b)(1). Alexis's first claim, asking for a construction of "deportable," is dismissed, with prejudice, because amendment would be futile. To the extent that Alexis's other claims challenge the constitutionality of the his detention, the court has jurisdiction to hear the petition, *Jennings*, 138 S. Ct. at 841, and the motion is denied.

### C. The Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

#### 1. Alexis's Due Process Claims

Alexis's third, fourth, sixth, and seventh claims allege substantive and procedural due process violations of § 1226 and the Fifth Amendment. (Docket Entry No. 1 at ¶¶ 85–100, 105–115). Alexis contends that his detention has "already extended well beyond the 'brief period of time' typically needed to complete [removal] proceedings," and that the government has prolonged his confinement by failing to prove removability in 2017. (*Id.* at ¶¶ 4, 50–52) (quoting *Denmore*, 538 U.S. at 513). Alexis claims that the failure to provide a "'sufficiently strong special justification' to outweigh [his] deprivation of liberty" makes his continued detention unlawful, and the court must order his release. (*Id.* at ¶ 5) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

The government responds that Alexis's detention complies with § 1226(c), which mandates confinement for an alien who commits certain offenses. (Docket Entry No. 21 at 7–8). According to the government, *Jennings* establishes that confinement under § 1226(c) meets due process

because detainees are released when their removal proceedings end.  (*Id.* at 9).  The government contends that although Alexis has been detained for over a year, that is reasonable and constitutional.  (*Id.* at 11).  Alexis replied that at "least six[] months of [his] detention is attributable to [the respondents'] failure to meet its burden of proof in its 2017 case against [him]," making it unreasonable.  (Docket Entry No. 22 at 4 n.1).

Under § 1226(c)(1)(B), the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title."  Section 1227(a)(2)(B)(i) reads: "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law . . . relating to a controlled substance[,] is deportable."  Under § 1226(c)(2), the "Attorney General may release an alien described in paragraph (1) only if the Attorney General decides . . . that release of the alien from custody is necessary to provide protection to a witness."

The parties agree that § 1226(c)(1)(B) governs Alexis's detention.  The government readmitted Alexis to the United States in 2011; in 2016, he was convicted of felony possession of a controlled substance; and Immigration and Customs Enforcement detained him in June 2017.  (Docket Entry no. 1 at ¶¶ 41, 50).

Both parties rely on *Denmore*.  (*See* Docket Entry No. 1 at ¶ 82; Docket Entry No. 21 at 7).  In *Denmore*, 538 U.S. at 513, a lawful permanent resident alien, Hyung Joon Kim, had been convicted of burglary and was subject to mandatory detention under § 1226(c).  The Supreme Court upheld his six-month detention, reasoning that "[d]etention during removal proceedings is a constitutionally permissible part of that process."  *Id.* at 531.  Relying on statistics showing that the average detention under § 1226(c) was 47 days and the median was 30 days, the majority held that Congress "may require that persons such as [the petitioner] be detained for the brief period necessary

for their removal proceedings." *Id.* at 513, 529. The Court observed that Kim's six-month detention was unusual but reasonable because the delay was attributable to Kim, not the government. *Id.* at 531. Each court of appeals that has examined § 1226(c) after *Denmore* has held that the Fifth Amendment restricts the permissible length of detention under the statute. *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486, 496 (1st Cir. 2016); *Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015); *Rodriguez v. Robbins*, 715, F.3d 1127, 1138 (9th Cir. 2013); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 232–33 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263, 269–70 (6th Cir. 2003); *cf. Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). These decisions impose a reasonableness limitation on detention under § 1226(c).

In *Jennings*, the Supreme Court reversed the Ninth Circuit's ruling that aliens detained under § 1226(c) were entitled to bond hearings every six months. *Jennings*, 138 S. Ct. at 852. The Court held that the statute's unambiguous language mandates detention during the pendency of removal proceedings and precluded an implicit bond-hearing requirement.[4] *Id.* at 846–48. The Court found that § 1226(c) "expressly prohibits release . . . except for narrow, witness-protection purposes." *Id.* at 846. But while the Court found that the statute restricted early release, it did not authorize indefinite detention. Instead, "detention under § 1226(c) has 'a definite termination point': the conclusion of removal proceedings." *Id.* (quoting *Denmore*, 538 U.S. at 529). The Court declined to decide whether and when prolonged detention under § 1226(c) violates the Constitution. *Id.* at 851. The Ninth Circuit is now considering that question on remand. *Rodriguez v. Jennings*, 887 F.3d 954 (9th Cir. 2018).

---

[4] Alexis's second claim asks the court to construe § 1226(c) "as authorizing such detention only for the 'brief period of time necessary' to complete removal proceedings." (Docket Entry No. 1 at ¶ 86). That argument is foreclosed by *Jennings*, and the court dismisses the claim, with prejudice, because amendment would be futile.

Neither the Fifth Circuit nor other courts of appeals have reviewed § 1226(c) since *Jennings*. Only one district court in this circuit has evaluated a similar petition. *See Silvera v. Joyce*, No. EP-17-CV-363-DCG, 2018 WL 1249913, at *3 (W.D. Tex. Mar. 9, 2018) (*Jennings* foreclosed the petitioner's request for release after a 15-month detention). But *Denmore* and *Jennings* make clear that a petitioner may bring as-applied challenges to § 1226(c), and that at least six months of detention is lawful. *Jennings*, 138 S. Ct. at 846; *Denmore*, 538 U.S at 530. That detention, however, cannot be indefinite and must end when removal proceedings are concluded. *Id.* A court must consider the length of detention to date, the likely duration of future detention, the conditions of detention, whether the detainee's civil confinement exceeds the incarceration for his conviction, and whether the detainee or the government prolonged the detention. *See Denmore*, 538 U.S. at 530–31 ("Respondent was detained for somewhat longer than the average . . . but respondent himself had requested a continuance of his removal hearing."); *see also Diop*, 819 F.3d at 500–01; *Muse v. Sessions*, No. 18-CV-54 (PJS/LIB), 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018).

*Zadvydas* examined § 1231(a)(6), not § 1226(c), but its reasoning is important. The Supreme Court found that postremoval detention under § 1231(a)(6) for longer than six months is presumptively unreasonable and construed the statute "to contain an implicit 'reasonable time' limitation." *Zadvydas*, 533 U.S. at 682. The Court implied the limitation to avoid "the serious constitutional concerns" that would result if § 1231(a)(6) permitted indefinite detention. *Id.*; *see Muse*, 2018 WL 446052, at *3 (explaining *Zadvydas* in the context of § 1226(c)). *Denmore* and *Jennings* distinguished *Zadvydas*, finding that while detention under § 1231(a)(6) might be permanent, detention under § 1226(c) must end when removal proceedings end. *Denmore*, 538 U.S. at 527–30; *Jennings*, 138 S. Ct. at 843–44. But detention beyond the "brief period" contemplated in *Denmore* "begins to resemble the indefinite detention addressed in *Zadvydas*," and "the

constitutional issues that concerned the [*Zadvydas* court] become more salient." *Muse*, 2018 WL 4466052, at *3; *see Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018).

District courts reviewing petitioners' as-applied challenges to § 1226(c) since *Jennings* have conducted fact-specific analyses. The length of detention and which party is held responsible for the delay in removal largely account for whether the court granted or denied habeas relief. *See, e.g.*, *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018) (the alien's year-long detention did not violate the Fifth Amendment because the alien prolonged his confinement); *Carlos A. v. Green*, No. 18-741 (SDW), 2018 WL 3492150, at *5 (D.N.J. July 20, 2018) (same); *Gonzalez v. Bonnar, et al.*, No. 18-CV-5321-JSC, 2018 WL 4849684, at *5 (N.D. Cal. Oct. 4, 2018) (the alien's 10-month detention complied with due process because his hearing before an immigration judge was scheduled, and the alien had "not suggested that the government or the [agency adjudicator] ha[d] acted in bad faith, delayed, or misled [him]"); *Muse*, 2018 WL 4466052, at *4–*6 (granting relief because the alien had been confined for 14 months, future confinement could have lasted an additional year, and the government detained him in a county jail, not a civil confinement center); *Thompson v. Edwards*, 18-1006 (ES), 2018 WL 4442225, at *3–*4 (D.N.J. Sep. 17, 2018) (granting relief because the alien had been detained for 26 months and there was no evidence that he had engaged in dilatory tactics); *Sajou*, 2018 WL 2357266, at *11–*12 (granting relief because the alien had been confined for 8 months, prolonged by the government's failure to process and send documents to his counsel); *Vega v. Doll*, No. 3:17-1440, 2018 WL 3756755, at *3–*5 (M.D. Pa. Aug. 8, 2018) (granting relief because the alien had been confined for 21 months and had not delayed his removal proceedings).

In this case, the government has detained Alexis for over 16 months, exceeding the "brief period" *Denmore* contemplated and resembling the indefinite detention at issue in *Zadvydas*. This weighs in favor of relief. *See Muse*, 2018 WL 446052, at *3.

The probable length of Alexis's future detention also favors relief. The immigration judge ordered Alexis removed in May 2018. The Board of Immigration Appeals dismissed his petition in October 2018, and Alexis petitioned the Fifth Circuit for review in November 2018. It is unclear when the Fifth Circuit will rule, and Alexis will likely appeal an adverse decision to the Supreme Court. Alexis's future confinement could exceed another year. *Id.*

The parties disagree on whether the government or Alexis has unreasonably delayed the removal proceedings. According to Alexis, the Department of Homeland Security "unnecessarily and unjustifiably" delayed his case by failing to sufficiently document its charge of removal. (Docket Entry No. 1 at ¶ 8). The government claims that Alexis "has submitted no evidence that the government has improperly or unreasonably delayed the regular course of proceedings, or that the government has detained him for any purpose other than the resolution of his removal proceedings." (Docket Entry No. 21 at 11). While there is no evidence that the government acted in bad faith, its failure to establish removability delayed the proceedings for approximately 7 months. And there is no evidence that Alexis has caused delay that would weigh against relief. *See Vega*, 2018 WL 3756755, at *4.

According to the respondents, Alexis was incarcerated from November 15, 2016, to June 26, 2017, for the felony conviction that mandated his current detention. (Docket Entry No. 21 at 2). His civil confinement is double the length of the prison sentence he received for the conviction. While that fact alone favors relief, the likelihood that Alexis will be detained for a considerable period in the future exacerbates the concern raised by this factor.

Based on the circumstances, Alexis's continued detention violates the Fifth Amendment. Only the conditions of Alexis's detention weigh against relief. The record shows that Alexis has been confined in civil detention centers, not criminal facilities. But it is the length of Alexis's confinement that is the "most important[] factor that must be considered." *Sajous*, 2018 WL 2357266, at *10. Alexis has been detained for 16 months. He may well be confined for another year. His detention exceeds the length of his criminal sentence. These facts, considered in light of *Denmore*, *Jennings*, and recent district court rulings, support finding that Alexis should be afforded a bond hearing. *Denmore*, 538 U.S. at 532 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.").

Because Alexis's continued detention is unconstitutional, the court denies the government's motion to dismiss his third, fourth, sixth, and seventh claims. The government must conduct a bond hearing no later than **January 11, 2019**, or show cause why an extension is needed.

### 2. Alexis's Excessive Bail Claims

Alexis's fifth and eighth claims allege violations of the Eighth Amendment's Excessive Bail Clause. (Docket Entry Nos. 1 at ¶¶ 102–03, 117–20). Alexis argues that the court should use constitutional avoidance to find that § 1226(c) authorizes no-bond detention only if the government establishes "a compelling interest other than the prevention of flight" and "where the length of detention is limited." (Docket Entry No. 1 at ¶ 103). Alexis contends that because the government has detained him for over a year, and because his detention does not serve a compelling interest, his continued detention violates the Eighth Amendment. (*Id.* at ¶¶ 104, 117, 119–20). Alexis alleges that the court should order his prompt release because he is neither a flight risk nor a danger to the

community.  (*Id.* at ¶ 104).  The government did not address the Excessive Bail Clause claims, and

Alexis did not address them in his response to the government's motion to dismiss.

The Excessive Bail Clause of the Eighth Amendment provides that "[e]xcessive bail shall

not be required."  U.S. CONST., amend. VIII.  But the Eighth Amendment "says nothing about

whether bail shall be available at all."  *United States v. Salerno*, 481 U.S. 739, 752 (1987); *see also*

*Carlson v. Landon*, 342 U.S. 524, 545 (1952) (The Excessive Bail Clause "has never been thought

to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those

cases where it is proper to grant bail").  "[W]hen Congress has mandated detention on the basis of

a compelling interest other than prevention of flight, . . . the Eighth Amendment does not require

release on bail."  *Salerno*, 418 U.S. at 754–55.

Alexis's argument is unavailing.  Detention under § 1226(c) "gives immigration officials

time to determine an alien's status without running the risk of the alien's either absconding *or*

*engaging in criminal activity* before a final decision can be made."  *Jennings*, 138 S. Ct. at 836

(emphasis added).  Alexis has committed a number of offenses, including the crime that mandated

his detention in June 2017, and his confinement serves one of the two purposes of § 1226(c):

community safety.  *See Reyes v. Underdown*, 73 F. Supp. 2d 653, 658 (W.D. La. 1999) ("By

mandating the detention of certain criminal aliens, Congress presumes that such aliens pose a danger

to the community.").  While the court grants Alexis relief under the Fifth Amendment, the Excessive

Bail Clause does not require bail in this context.  The court dismisses Alexis's fifth and eighth

claims.  *See Marogi v. Jenifer*, 126 F. Supp. 2d 1056, 1062 (E.D. Mich. 2000) (rejecting an

Excessive Bail challenge by an alien detained under § 1226(c)); *Avramenkov v. I.N.S.*, 99 F. Supp.

2d 210, 218 (D. Conn. 2000) (same); *accord Carlson*, 342 U.S. at 545–46 (upholding the mandatory

detention of aliens without bail even though they had not been found to be flight risks or

individually dangerous); *Denmore*, 538 U.S. at 525–26 (affirming *Carlson* and upholding six months of mandatory detention under § 1226(c)).

### 3. Alexis's Medical Treatment Claim

The ninth claim alleges that the government has denied Alexis medical treatment in violation of the Eighth Amendment. (Docket Entry No. 1 at ¶¶ 122–24). The government argues that Alexis has conceded that he received medical treatment and "only disagrees with the extent of the medical treatment he received." (Docket Entry No. 21 at 15). According to the government, Alexis's disagreement with his medical care is insufficient to state an Eighth Amendment claim. (*Id.*). The government also contends that allegations of negligence or medical malpractice also fail to state a claim. (*Id.*). Alexis responds that he has provided the government evidence of his mental illness, and that despite receiving that information, the government repeatedly refused to treat him. (Docket Entry No. 1 at ¶ 67). He alleges that the refusals show "deliberate indifference," warranting relief under the Eighth Amendment. (Docket Entry No. 1 at ¶ 124; Docket Entry No. 22 at 6).

Because detention under § 1226(c) does "not directly result from conviction for a crime[,] the Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable." *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000). The Fifth Circuit "consider[s] a person detained for deportation to be the equivalent of a pretrial detainee." *Id.* "[A] pretrial detainee's constitutional claims are considered under the due process clause [of the Fifth Amendment] instead of the Eighth Amendment." *Id.* The standards for both are the same: subjective deliberate indifference. *Hare v. City of Corinth*, 74 F.3d 633, 636 (5th Cir. 1996) (en banc).

Under the "deliberate indifference" standard, a public official is liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Neither disagreement with a provider's treatment, negligence, nor malpractice rise to an Eighth Amendment violation. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

The government correctly argues that the record shows only that Alexis disagrees with the medical treatment and care he received, not that his medical needs were deliberately ignored. (Docket Entry No. 21 at 15). Medical staff "conducted daily visits and 'weekly mental health seg[regation] rounds'" to evaluate Alexis. (Docket Entry No. 1 at ¶ 71). The notes from those visits state that he "did not require mental health treatment, and that [his] mood was 'happy.'" (*Id.*)

Alexis concedes that the detention center medical staff has examined him on numerous occasions. "[T]he detention center medical provider concluded that Alexis suffers only from 'cocaine abuse with unspecified cocaine-induced disorder' and 'imprisonment and other incarceration' and requires neither mental health treatment no[r] follow up care." (*Id.* at ¶ 69). Alexis alleges that he asked for medication in June 2018, but was told "that he did not need it and that it would 'hurt his case.'" (*Id.* at ¶ 77).

Alexis's complaint shows his disagreement with the providers' decisions. It does not even allege negligence. Alexis has failed to state a claim for an Eighth Amendment violation. *See Gibbs*, 254 F.3d at 549. The claim is dismissed, with prejudice, because amendment would be futile.

## IV. Conclusion

The court dismisses the claims against Sessions, Nielsen, Homan, Contreras, and Hartnett as improper respondents. Alexis may amend his petition to add Tate as a respondent no later than **November 30, 2018**.

The court dismisses the petition's first claim, with prejudice, for lack of subject-matter jurisdiction. Because the petition's second claim is foreclosed by *Jennings*, 138 S. Ct. at 846, it is also dismissed with prejudice.

To the extent that the petition's third, fourth, sixth, and seventh claims allege violations of the Fifth Amendment's Due Process Clause, the court denies the government's motion to dismiss and requires the government to hold an individualized bond hearing to determine whether continued detention is necessary to prevent Alexis from fleeing or to protect the community. The government must conduct the hearing no later than **January 11, 2019**, or show cause why an extension is needed.

The court dismisses the petition's fifth, eighth, and ninth claims, with prejudice, for failure to state a claim on which relief can be granted.

SIGNED on November 13, 2018, at Houston, Texas.

Lee H. Rosenthal

United States District Judge